```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
───────────────────────────────────
WILMINGTON TRUST, N.A.,
                                        20-cv-6089 (JGK)
                    Plaintiff,
                                        MEMORANDUM OPINION
         - against -                    AND ORDER

5400 RALEIGH CRABTREE, LLC, ET AL.,

                    Defendants.
───────────────────────────────────
```

**JOHN G. KOELTL, District Judge:**

     Pending before the Court is a motion by Mr. Jeffrey Kolessar (the "Receiver") for an order permitting him to liquidate the mortgaged properties at issue in this action (the "Properties") through a combination of deeds in lieu of foreclosure and/or receiver's sales. ECF No. 164. The defendant-borrowers ("Defendants") object to such an order unless the Court makes specific findings, among other things, that the deed in lieu of foreclosure is not a prohibited transfer or an event of default under either or both of the Mezzanine Loan Agreement and the Mezzanine Guaranty Agreement. ECF No. 176. In its papers, ACF L1-M, LLC (the "Mezzanine Lender") objects to the Receiver's motion, alleging that the Court has no jurisdiction over the Mezzanine Lender and that the Mezzanine Lender's rights will be compromised. ECF No. 181. At the argument of the motion, however, the Mezzanine Lender did not object to the Receiver's application so long as it is clear that the order does not

extinguish the rights of the Defendants, the Mezzanine Lender, or Guarantor under the Mezzanine Loan Agreement and Guaranty. For the following reasons, the Receiver's motion to liquidate mortgaged properties through a combination of deeds in lieu of foreclosure and/or receiver's sales is **granted**.

## I.

The following are the facts most relevant to the disposition of the Receiver's motion.

On June 28, 2017, the predecessor-in-interest of the plaintiff Wilmington Trust, N.A. (the "Mortgage Lender") entered into a loan agreement (the "Mortgage Loan") for $204 million with the Defendants, which was secured by, among other assets, mortgage liens on twenty-two properties owned by the Defendants. Compl. ¶¶ 39, 43, ECF No. 1.

On the same day, certain entities that are the sole members of the Defendants (the "Mezzanine Borrowers") accepted a loan from the Mezzanine Lender in exchange for a pledge of the membership interests that the Mezzanine Borrowers own in the Defendants, together with a collateral assignment of certain purchase options. Declaration of Kimberly F. Aquino ¶ 2, ECF No. 177; see also id., Ex. 1, ECF No. 177-1. Additionally, the Guarantor executed a Mezzanine Guaranty Agreement with the Mezzanine Lender, under which the Guarantor agreed to guarantee performance of certain of the Mezzanine Borrowers' obligations

2

under the Mezzanine Loan Agreement. See id., Ex. 2, ECF No. 177-2. Finally, the Mortgage Lender and the Mezzanine Lender entered into the Intercreditor Agreement, which provides that the Mezzanine Lender is entitled to fifteen business days' written notice of the Mortgage Lender's acceptance of a deed in lieu of foreclosure given by a Defendant with respect to any of the Properties. Declaration of Joseph Caruso ¶¶ 13-14, ECF No. 182 ("Caruso Decl."); see also id., Ex. 4, ECF No. 182-4.

On April 1, 2020, the Defendants defaulted in their payment obligations under both the Mortgage Loan, see Compl. ¶ 75, and the Mezzanine Loan, see Caruso Decl. ¶ 16. On August 4, 2020, the plaintiff filed this action. ECF No. 1. On August 18, 2020, the parties wrote jointly to inform that Court that the Defendants consented -- after a "regrettable" delay -- to the entry of an order appointing a receiver, after "negotiating the consequences for Defendants' consent to the receivership [with the Mezzanine Lender]." ECF No. 28. In a Consent Order dated August 19, 2020, this Court appointed Mr. Kolessar as the Receiver. Consent Order Appointing Receiver, ECF No. 29; see also Declaration of Jeffrey Kolessar ¶ 1, ECF No. 165 ("Kolessar Decl."). The Consent Order provides that "[t]he [Properties] and Defendants' Assets may be sold by way of public or private sale or other disposition free and clear of all security interests, liens, claims and other interests[;] all valid security

3

interests, liens, claims, and other interests, if any, shall attach to the proceeds of such sale(s)." Consent Order Appointing Receiver ¶ 22. The Receiver then began to market the Properties for sale by soliciting and reviewing proposals, listing agreements, and marketing plans; retaining a broker; and overseeing two marketing campaigns. Kolessar Decl. ¶¶ 10-14. The marketing campaigns were unsuccessful at locating a buyer. Id. ¶¶ 15-16.

Accordingly, on December 19, 2023, the Receiver filed the current motion to liquidate the Properties through a combination of deeds in lieu of foreclosure and/or receiver's sales. ECF No. 164. The amount due on the Mortgage Loan as of November 30, 2023, is $262,989,455.80. Kolessar Decl. ¶ 20. The Receiver -- who has acted as a receiver for and operated hotels since 1995 and has been the Receiver for the Properties in this case for over three years -- reports that a sale of the Properties to third parties would yield only a portion of the outstanding debt and delay liquidation of the Properties, thereby causing the parties to incur significant expense and delay. Id. ¶¶ 19, 21-24.

## II.

"A receiver, as an officer or arm of the court, is a trustee with the highest kind of fiduciary obligations." Phelan v. Middle States Oil Corp., 154 F.2d 978, 991 (2d Cir. 1946).

4

The receiver "owes a duty of strict impartiality, of undivided loyalty, to all persons interested" and "is bound to act fairly and openly with respect to every aspect of the proceedings before the court." Id.

"A receiver has the affirmative duty to endeavor to realize the largest possible amount for . . . [,]" id.; see also Golden Pac. Bancorp. v. F.D.I.C., 375 F.3d 196, 201 (2d Cir. 2004), and "protect the value of an asset that is the subject of litigation," United States v. Ianniello, 824 F.2d 203, 205 (2d Cir. 1987). To that end, receivers are "granted broad powers to, inter alia, . . . liquidate those assets . . . ." S.E.C. v. Credit Bancorp., Ltd., 297 F.3d 127, 130 (2d Cir. 2002).

### III.

#### A.

The Receiver initially argues -- and the Defendants and the Mezzanine Lender do not dispute -- that the Receiver has the authority to liquidate the Properties. Receiver's Mot. 3-5, ECF No. 171. As "an officer or arm of the court," Phelan, 154 F.2d at 991, receivers are granted broad powers, including the power to liquidate assets, see Credit Bancorp., 297 F.3d at 130. In this case, the Court, on the parties' consent, granted the Receiver the authority to dispose of all or a portion of the Properties. See Consent Order Appointing Receiver ¶ 22; see also Kolessar Decl. ¶¶ 7-8. In particular, "[i]f the Court determines

5

that appropriate circumstances exist for selling all or a portion of the [Properties], the Court may enter an order authorizing and directing the Receiver to sell the [Properties] . . . by way of public or private sale or other disposition . . . ." Consent Order Appointing Receiver ¶ 22. Accordingly, the Receiver has the authority to sell the Properties.

The Receiver also argues that it is in the parties' best interest to dispose of the Properties through a combination of deeds in lieu of foreclosure and/or receiver's sales. Receiver's Mot. 5-8. A receiver "must endeavor to realize the largest possible amount for assets . . . ." Golden Pac. Bancorp., 375 F.3d at 201. In so doing, "[a]ll the Receiver is required to establish is that there are sound business reasons for selling assets . . . ." Lawsky v. Condor Cap. Corp, 154 F. Supp. 3d 9, 22 (S.D.N.Y. 2015). "Once he makes such a showing, the Receiver's determination that [a sale] is in the best interest of [the parties] is owed deference under the business judgment rule." Id. (citing Golden Pac. Bancorp.). In this case, the Receiver has demonstrated why there are sound business reasons for deeds in lieu of foreclosure. After expending a significant amount of effort and resources over several years, the Receiver and the parties determined in April 2023 that a deed in lieu of foreclosure -- rather than the sale of the Properties to a third-party purchaser -- was the best method to dispose of the

6

Properties. See Kolessar Decl. ¶¶ 16-17. The Receiver -- a receiver for hotel properties since 1995 and the Receiver who oversaw the marketing campaigns for the Properties for the past three years -- observed that a third-party sale would yield significantly less than the debt owed, increase the Defendants' outstanding debt, and further delay disposal of the Properties. See id. ¶¶ 19-20, 22; see also id., Ex. C. By contrast, liquidation of the bulk of the Properties by deed in lieu of foreclosure would provide the highest net present value recovery for each property and obviate the need for further marketing and accompanying court proceedings, thereby mitigating the plaintiff's losses and extinguishing the Defendant's outstanding obligations. See id. ¶¶ 23-24. This approach would also allow the Receiver the flexibility to sell one or more of the Properties through a nonjudicial foreclosure or receiver's sale should circumstances warrant a one-off sale, such as the immediate need for substantial repairs and/or renovations. Thus, the Receiver has made a showing that deeds in lieu of foreclosure would be in the best interest of the parties, and the Receiver's determination is owed deference by this Court. Cf. In re Chateaugay Corp., 973 F.2d 141, 144-45 (2d Cir. 1992) (affirming a bankruptcy court's approval of an asset sale because it was supported by good business reasons, including the risk that delay would reduce the value of the assets, the

7

debtor's need for cash, and the opportunity to get a high prices for the assets).

Finally, the Receiver, by filing the instant motion, has provided fifteen days' written notice pursuant to Section 14(b)(ii) of the Intercreditor Agreement. See Kolessar Decl. ¶ 25; see also id., Ex. D § 14(b)(ii). Neither the Defendants nor the Mezzanine Lender dispute the lapse of the fifteen days after service of the Receiver's motion. See Mezzanine Lender's Opp'n 9-10, ECF No. 181. Accordingly, the Receiver has provided required notice.

In summary, the Receiver has the authority to dispose of the Properties, has made a showing that deeds in lieu of foreclosure would be in the best interest of the parties, and has provided notice as required by the Intercreditor Agreement.

**B.**

In its papers opposing the Receiver's motion, the Mezzanine Lender initially argued that the Court lacks jurisdiction over the Mezzanine Lender because the Mezzanine Lender has not consented to jurisdiction in New York. Mezzanine Lender's Opp'n 9. However, as the Receiver correctly argues, the Mezzanine Lender agreed in the Intercreditor Agreement to "irrevocably and unconditionally submit[] to the jurisdiction of the United States District Court for the Southern District of New York[.]" Receiver's Reply 8, ECF No. 184; see also Kolessar Decl., Ex. D

8

§ 17(g), ECF No. 165-4. The Mezzanine Lender attempts to argue that the Intercreditor Agreement "does not apply under the circumstances here" because "[t]he Mezz[anine] Loan Agreement and the Guaranty do not arise out of the Intercreditor Agreement and are not transactions contemplated under the Intercreditor Agreement." Mezzanine Lender's Opp'n 9. But the issue here -- deed in lieu of foreclosure -- clearly "relates to" the Intercreditor Agreement and is a "transaction contemplated" under the Intercreditor Agreement. See Kolessar Decl. ¶ 26; see also id., Ex. D §§ 14(b) (repeatedly mentioning deed in lieu of foreclosure or "DIL"), 17(g). Therefore, the Mezzanine Lender consented to jurisdiction. In any event, the plaintiff has not sought to join the Mezzanine Lender as a party and has not sought any relief against the Mezzanine Lender, and the Mezzanine Lender has not sought to join this lawsuit as a party. Rather, the Receiver has provided notice to the Mezzanine Lender as required by the Intercreditor Agreement, and the Mezzanine Lender has submitted its views on the Receiver's application.

    The Mezzanine Lender argues that "the relief being sought clearly impacts [the] Mezz[anine] Lender's rights under the Mezz[anine] Loan Agreement and Guaranty." Mezzanine Lender's Opp'n 13. More specifically, the Mezzanine Lender contends that allowing deeds in lieu of foreclosure "would not only deprive [the] Mezz[anine] Lender of its right to bid on any individual

9

property at the required foreclosure sale, but also deprive [the] Mezz[anine] Lender of its right to retain any equity over and above the mortgages that might be realized at any foreclosure sales." Id. However, the Receiver's motion "does not seek to extinguish the rights of either Defendants or Mezzanine Lender in relation to the mezzanine loan documents." Receiver's Reply 7. First, as a practical matter, the Mezzanine Lender already exercised its right to bid on the Properties, and its low bid indicated that there would be no equity over and above the mortgages. Arden Property Trust, LLC, the sole member of the Mezzanine Lender, see Caruso Decl. ¶ 4, submitted bids for the Properties well below the amount due to the plaintiff, see Kolessar Decl. ¶ 13; see also id., Ex. A. Furthermore, the Mezzanine Lender has failed to demonstrate that it has any right to demand that the Properties be sold at a foreclosure sale. At the argument of this application, the Mezzzanine Lender made it clear that it did not oppose the Receiver's application so long as the order made it clear that nothing in the order extinguished the rights of the Mezzanine Lender or Guarantor under the relevant documents. The Mezzanine Lender's position at argument is consistent with the Receiver's application.

  The Defendants do not object in principle to the Receiver's motion. See Defs.' Opp'n ¶ 22, ECF No. 176. However, the Defendants ask that the Court include in its order various

10

conditions, including: an express finding that Defendants objected to the deed in lieu of foreclosure transaction, an express finding that the Receiver has directed the Mezzanine Borrowers within the meaning of Section 5.14 of the Mezzanine Guaranty Agreement to execute the transaction, an express finding that the Mezzanine Lender is barred from bringing any claims against the Mezzanine Borrowers and the Guarantor, and an order confirming the scope of the Receiver's authority as "attorney-in-fact" for the Defendants. See id. ¶ 31. These conditions appear to make representations about the Mezzanine Loan documents and go beyond the relief that the Receiver has sought.

In view of the fact that the Receiver's motion does not seek to affect the rights of the Mezzanine Lender, it is sufficient to add a provision to the order that states what the Receiver repeatedly states in his motion. "[T]he [m]otion does not seek to extinguish the rights of either [d]efendants or Mezzanine Lender in relation to the mezzanine loan documents." Receiver's Reply 7. "[T]he [m]otion does not seek to extinguish and/or seek determination as it relates to the mezzanine loan agreement or guaranty." Id. at 8. As the Defendants concede, "[s]uch a confirmatory order would be consistent with the plain language of Section 5.14 of the Mezzanine Guaranty Agreement," Defs.' Opp'n ¶ 27, and therefore no express finding as to the

11

meaning of Section 5.14 is necessary. Therefore, the proposed final order should include language substantially as follows: "The Court's Order does not extinguish or make any determination as to the rights of either the Defendants or the Mezzanine Lender or Guarantor in relation to the mezzanine loan documents."

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the foregoing reasons, the Receiver's motion to liquidate mortgaged properties through a combination of deeds in lieu of foreclosure and/or receiver's sales is **granted.** The Receiver should submit a proposed order in seven business days. Any objection should be submitted five business days thereafter. Replies can be submitted three business days thereafter. Memoranda with any necessary explanation may be submitted along with the proposals.

**SO ORDERED.**

**Dated:** New York, New York
February 5, 2024

_____
John G. Koeltl
United States District Judge